IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE: NABEEL D. ALDEIR )
                                                                    )     No. 09 C 6932
                                                                    )
                                                                    )     Judge Robert W. Gettleman
                                                                    )
                                                                    )     Bankruptcy No. 08-01959
                                                                    )     Honorable Carol A. Doyle, Presiding

## MEMORANDUM OPINION AND ORDER

Appellant trustee David P. Leibowitz (the "Trustee") appeals from an order of the United States Bankruptcy Court for the Northern District of Illinois ruling that the Trustee must pay debtor Nabeel D. Aldeir (the "Debtor") the value of his vehicle exemption prior to turnover of the vehicle. The Debtor has not appeared or filed a brief because the amount in controversy ($2,400) is so small. For the reasons set forth below, the decision of the bankruptcy court is affirmed.

## FACTS

The Debtor filed a bankruptcy petition on January 30, 2008, and the Trustee was subsequently appointed as the Chapter 7 trustee for the Debtor's estate. The Debtor's petition included a schedule of personal property listing a 2003 Ford Explorer ("Explorer") worth $4,000, among other assets. In his Motion for Turnover, the Trustee stated that the Explorer's "Blue Book" value was approximately $6,715. Under 735 ILCS 5/12-1001(c), the Debtor is entitled to a vehicle exemption of as much as $2,400 with respect to the Explorer.

A lien on the Explorer was satisfied, and on July 22, 2009,[1] the Trustee filed a Motion for Turnover of the Explorer. The Debtor opposed the motion on the ground that the Trustee had not yet tendered payment of the $2,400 exemption. At a preliminary hearing on August 25, 2009, Bankruptcy Judge Eugene Wedoff stated his intent to resolve the matter by written opinion, but Judge Wedoff was later unavailable. Subsequently, Bankruptcy Judge Carol Doyle made an oral ruling on September 15, 2009, that the Trustee must pay the Debtor the value of his exemption prior to turnover of the Explorer, although she set the remainder of the motion for hearing on September 29, 2009.[2] A written order was entered on the same day. The Trustee filed this appeal from the September 15, 2009, order on September 24, 2009.

## DISCUSSION

This court has jurisdiction to hear the instant appeal under 28 U.S.C. § 158(a)(1), which provides that "[t]he district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders and decrees...of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." On appeal, the bankruptcy court's rulings and conclusions of law are reviewed de novo, Meyer v. Rigdon, 36 F.3d 1375, 1378 (7th Cir. 1994), and its findings of fact are not set aside unless they are clearly erroneous. Fed. R. Bankr. P. 8013.

The Trustee makes several arguments on appeal. First, looking to the text of the Bankruptcy Code, the Trustee argues that the Code lacks a provision entitling a debtor to

---

[1] In his brief, the Trustee states that the motion was filed on July 12, 2009. The docket indicates that the motion was filed on July 22, 2009.

[2] The remainder of the motion concerned the Debtor's representation to Judge Doyle that the Debtor does not have possession of the Explorer; his ex-brother-in-law has the vehicle.

2

payment before a trustee may liquidate property, and that Congress would have included such a provision if intended. Second, the Trustee argues that Illinois debtor-creditor law cannot preempt the Bankruptcy Code with respect to a trustee. Third, the Trustee argues that Illinois law does not require payment before personal property is subject to turnover, and In re Szekely, 936 F.2d 897 (7th Cir. 1991), does not control. Finally, the Trustee argues that, due to practical considerations, such a requirement is unworkable and would undermine the efficacy of the bankruptcy system.

Regarding the first point, Congress made clear its intent that states have broad discretion over exemptions in bankruptcy. "[Section] 522(b) reflects a compromise between conflicting legislative provisions, with the apparent intent of allowing states to retain wide discretion over the exemptions applicable in bankruptcy." In re Fishman, 241 B.R. 568, 573 (Bankr. N.D. Ill. 1999) (citing In re Ondras, 846 F.2d 33, 35 (7th Cir. 1988)). "[T]he Bankruptcy Code never preempts state laws defining the scope of exemptions applicable in bankruptcy: 'Nothing in subsection [522](b) (or elsewhere in the Code) limits a State's power to restrict the scope of its exemptions.'" In re Fishman, 241 B.R. at n.1 (citing Owen v. Owen, 500 U.S. 305, 308 (1991)). Thus, Illinois has wide discretion over the scope and, presumably, the terms of its exemptions.

The Trustee refers to 11 U.S.C. § 1129(a)(9), applicable to Chapter 11 plans. The provision is relevant to priorities in §§ 507(a)(2) and 507(a)(3), which lack language providing the discretion given by Congress with regard to exemptions in § 522. Further, requiring the Trustee to pay the Debtor the value of his exemption prior to turnover does not violate the plain meaning of §§ 521(a)(4) and 542(a), and the absence of an express provision does not bar such payment in light of the Congressional intent discussed above.

3

Accordingly, the Trustee's second point is incorrect; Illinois debtor-creditor law does not preempt the Bankruptcy Code because the Code incorporates state law. The Ninth Circuit stated this precept well in In re Tippett, 542 F.3d 684, 689 (9th Cir. 2008)(quoting Gade v. Nat'l Solid Wastes Mgmt. Ass'n, 505 U.S. 88, 98 (1992), and Sherwood Partners, Inc. v. Lycos, Inc., 394 F.3d 1198, 1201 (9th Cir. 2005)):

> In general, '[a]bsent explicit pre-emptive language,…field pre-emption [occurs] where the scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it.' As we recently explained, '[t]here can be no doubt that federal bankruptcy law is pervasive and involves a federal interest so dominant as to preclude enforcement of state laws on the same subject'–namely, the subject of bankruptcy. 'At the same time, federal law coexists peaceably with, and often expressly incorporates, state laws regulating the rights and obligations of debtors (or their assignees) and creditors.'

Thus, while the Trustee is correct that Congress intended uniformity of bankruptcy laws, state laws and principles have their place in the administration of bankruptcy estates.

The Trustee relies in part on In re Koeneman, 410 B.R. 820 (C.D. Ill. 2009). In discussing the notion that procedural and substantive state law rights related to exemptions are not incorporated into bankruptcy, the court noted, "[s]everal decisions have recognized exemptions created by other statutory provisions, thus the Debtors [*sic*] reliance on a section of the Illinois code not dealing explicitly with bankruptcy does not immediately preclude the debtors from attempting to establish an exemption under this statute." Koeneman, 410 B.R. at 823. The court examined the Illinois Wage Deduction Act (IWDA) in the context of bankruptcy law and, in resolving the dispute, focused on the principles underlying the IWDA. Id. at 826-27. Although the court held that the IWDA was inapplicable outside the wage deduction or collection of judgments contexts, it did not hold that Illinois law should not supplement or affect

4

exemptions in bankruptcy. The court's ruling avoided a loophole in the exemption scheme and gave full effect to the purpose of the IWDA. In the instant appeal, the purpose of the vehicle exemption would be given full effect by the Trustee's payment to the Debtor prior to or at the time of turnover of the vehicle.

Third, the Trustee argues that Illinois law does not require payment before personal property is subject to turnover, and that Szekely does not control. In Szekely, after the petition date, the debtors continued to occupy the house in which they claimed a $15,000 homestead exemption. The Seventh Circuit held that the trustee could not force the debtors to pay rent or vacate until they were paid the value of their exemption. The question was one of first impression, and the court relied on policy, not precedent, to resolve it. Szekely, 936 F.2d at 902.

Despite the distinctions identified by the Trustee, this court finds that the principles espoused in Szekely are applicable and crucial in the instant appeal. As noted by the bankruptcy court, the Szekely court stated that withholding payment would "undermine[] the purpose of the exemption, which is to assure the debtor adequate housing despite the economic disaster that has overtaken him." Id. Similarly, withholding payment from the Debtor would undermine the purpose of the vehicle exemption, which is to assure adequate transportation.

The Trustee claims that Illinois law treats real property exemptions and personal property exemptions differently. Such differences, whether procedural or substantive, do not detract from the underlying purpose of the vehicle exemption. Further, in Matter of Barker, 768 F.2d 191, 196 (7th Cir.1985), the Seventh Circuit mandated that personal property exemptions be liberally construed in favor of the debtor:

> In addition to this legislative history, this circuit and the courts in Illinois have consistently held that personal property exemption statutes should be liberally

construed in order to carry out the legislature's purpose in enacting them–to protect debtors…This clear legislative intent to grant protections to debtors and the courts' liberal construction of exemption statutes convince us that in a case such as this one, where an exemption statute might be interpreted either favorably or unfavorably vis-á-vis a debtor, we should interpret the statute in a manner that favors the debtor.

This court does not address whether all exempt personal property should be treated similarly; the purpose of the vehicle exemption, however, would be particularly undermined if the Debtor had to turn over the vehicle without payment. Transportation may very well be a debtor's most costly expense and yet the most necessary. The bankruptcy court reasoned: "[F]or many debtors a vehicle is very important and in some cases more important than a home. It is often a debtor's sole means of commuting to work, taking children to school, or performing numerous other daily tasks. And for those debtors who do not own a home, a vehicle may be their most valuable exemption."

Finally, the Trustee argues that, due to practical considerations, requiring advance payment of the exemption is unworkable and would undermine the efficacy of the bankruptcy system. The Szekely court considered potential hardship to the trustee and concluded: "The hardship to the debtor should have the greater weight in decision. The homestead exemption, perhaps especially when as here it is capped at a relatively modest sum of money, is designed to assist the debtor to the extent of the exemption to obtain more modest living quarters." Szekely, 936 F.2d at 902-03.

In the instant appeal, the amount of the exemption is more modest than any under the homestead exemption, and the Trustee may accomplish payment of the exemption to the Debtor at the time of sale and relinquishment of possession without having to advance the funds himself. Parenthetically, in Szekely, the court considered the possibility that the trustee might be unable

6

to obtain another mortgage, and it nevertheless found that the trustee must pay the value of the debtors' exemption prior to vacating.

However, this conclusion does not end the matter, because the Trustee filed notice of appeal before Judge Doyle could deal with the logistics of selling the Explorer and disposing of the proceeds. Because the Debtor represented to the bankruptcy court that his ex-brother-in-law has possession of the vehicle, the Bankruptcy Court must establish procedures for obtaining delivery and sale of the vehicle. For example, the Debtor could be ordered to have the Explorer delivered to a dealer or other buyer chosen by the Trustee so that the Debtor can receive payment of his exemption upon the sale.

## **CONCLUSION**

For the reasons stated above, the decision of the bankruptcy court is affirmed, and the matter is remanded for proceedings consistent with this opinion.

**ENTER:** April 21, 2010

_____
  **Robert W. Gettleman**
  **United States District Judge**